**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| MADISON ANGELL,<br><br>Plaintiff,<br><br>v.<br><br>LIV RECOVERY SOBER LIVING,<br><br>Defendant.<br><br><u>Serve at:</u><br>Registered Agent<br>Cameo N. Jones<br>719 Stonewood Bend Drive<br>Lake Saint Louis, MO 63367-4064 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.:_______________<br><br>**<u>JURY TRIAL DEMANDED</u>** |

## <u>COMPLAINT</u>

COMES NOW Plaintiff, Madison Angell ("Plaintiff"), by and through her attorneys, Mathis, Marifian & Richter, Ltd., and for her Complaint against the Defendant, LIV Recovery Sober Living ("Defendant" or "LIV"), states as follows:

1. This is an action that relates to Plaintiff's employment with Defendant and her termination. Plaintiff's claims are under:

   a. Title VII of the Civil Rights Act of 1964, under 42 U.S.C. §2000e;

   b. The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.;

   c. The Missouri Human Rights Act, RSMO 213.010 et seq;

   d. The Missouri Whistleblower Protection Act, RSMO 285.575 et seq; and

   e. The Missouri common law of retaliatory discharge.

## JURISDICTION AND VENUE

2. The Court has original jurisdiction over Counts I & II under 28 U.S.C. § 1331 (federal question), and 1343 (civil rights), based on Plaintiff's Title VII and Americans with Disabilities Act Claim. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367(a) in that the claims are so related to the claim over which this Court has original jurisdiction that they form part of the same case or controversy.

3. Venue is proper as Plaintiff's claims arise out of conduct occurring within the Eastern District of Missouri.

## PARTIES

4. Defendant LIV Recovery Sober Living is a nonprofit corporation with its principal place of business located at 719 Stonewood Bend Dr., Lake St. Louis, St. Charles County, State of Missouri 63367-4064.

5. Plaintiff is a former employee of Defendant Liv Recovery Sober Living who lives in Edwardsville, Illinois.

6. Plaintiff began working for Defendant as a full-time employee in May of 2024.

7. At the time Defendant discharged Plaintiff, Plaintiff was the Director of Development for Defendant.

## GENERAL ALLEGATIONS

8. On April 2, 2025, Plaintiff Madison Angell submitted a charge of discrimination against Defendant LIV Recovery Sober Living to the U.S. Equal Employment Opportunity Commission ("EEOC").

9. On May 30, 2025, Defendant LIV Recovery Sober Living responded to the EEOC.

10. On July 6, 2026, the EEOC informed Plaintiff Madison Angell, through a Determination and Notice of Rights, of the ability to pursue a private lawsuit regarding her claim within ninety (90) days of the Notice.

11. This Complaint is being filed within 90 days of the July 6, 2026, Notice of Rights.

12. At all times relevant herein, Defendant was required, under federal law (Title VII of the Civil Rights Act of 1964 & 42 U.S.C. 2000e-2) to not discriminate against Plaintiff regarding her race.

13. At all times relevant herein, Defendant was required, under federal law (the Americans with Disabilities Act of 1990) to not discriminate against Plaintiff regarding her disability under 42 U.S.C. §12112.

14. At all times relevant herein, Defendant was required, under federal law, to not retaliate against Plaintiff regarding her disability. 42 U.S.C. §12203(a).

15. At all times relevant herein, Defendant was required, under Missouri law (the Missouri Human Rights Act) to not discriminate against Plaintiff regarding her race or her disability. RSMO 213.055(1)(a).

16. At all times relevant herein, Defendant was required to not retaliate against Plaintiff for reporting and whistle blowing activity under Missouri law (the Missouri Whistleblower Protection Act).

17. At all times relevant herein, Defendant was required, based on public policy, to not retaliatorily discharge Plaintiff based on certain reporting to her supervisors or based on her disability.

18. Plaintiff began her employment with Defendant LIV Recovery and Sober Living in March of 2024, and was employed by them until October of 2024.

19. Early in Plaintiff's employment with Defendant LIV Recovery and Sober Living, Plaintiff disclosed to her direct supervisor, the owners of LIV, and two different administrative leaders within LIV, that she was Bipolar (specifically Bipolar II) and that, based on her diagnosis, she needed additional time to respond to immediate demands and questions.

20. This need to have additional time for response based on her Bipolar disability was well known by her direct supervisors.

21. As a part of Plaintiff's job responsibilities, Plaintiff oversaw implementation of fundraising initiatives, donor recognition, and donor cultivation opportunities.

22. Plaintiff's responsibilities also involved writing grants.

23. During Plaintiff's employment, as Director of Development, and because of the information and documentation which Plaintiff was privy to through her employment, Plaintiff became concerned with financial integrity issues within LIV.

24. Specifically, Plaintiff became concerned that there was a lack of financial oversight by the board of directors, lack of any position taking on the responsibilities of chief financial officer, and a lack of internal controls safeguarding and avoiding misuse of monies and assets.

25. In a nonprofit, like LIV, it is especially important that there is oversight and controls present as the funds used to pay for programs are federal funds and state funds from different grants.

26. These federal funds are given to nonprofit organizations with strict guidelines that include necessary oversight and controls which prevent the misuse of federal and state funds.

27. Plaintiff's concerns regarding the lack of oversight and lack of adequate controls were brought to the attention of LIV's board president and LIV's CEO, Cameo Jones, sometime within the week of September 23rd-27th, 2024.

28. During September 30th through October 7th, 2024, Plaintiff was out of the office on a pre-planned vacation.

29. On October 6th, 2024, near the end of Plaintiff's vacation time, Plaintiff received a message letting her know that her job description had been changed and that she would be taking on more work with her position.

30. On October 8th, 2024, when Plaintiff returned to work and expressed concerns about her change in job description and additional duties, she was informed that she was being hostile.

31. Defendant placed Plaintiff on a 48-hour unpaid leave pending an investigation of her alleged "hostility".

32. Defendant drafted and sent Plaintiff a formal complaint regarding her alleged "hostility" via email, and Plaintiff's supervisor, CEO Cameo Jones, over a Zoom call, called Plaintiff a "child", describing Plaintiff as unprofessional and described how she had brought up her concerns about her additional job duties as "throwing a tantrum".

33. Defendant's CEO Cameo Jones (who is African American) further accused Plaintiff attempting to exert her "white privilege" during meetings.

34. Defendant discriminated against Plaintiff based on the fact that she was Caucasian, discriminated against her based on her disability, did not allow for reasonable accommodations based on her disability, retaliated against her because of these things, and retaliated against her because of her raising concerns about the lack of oversight and internal controls for federal and state funds.

**COUNT I**
**TITLE VII & MHRA: Racial Discrimination**
**(42 U.S.C. § 2000e-2 & RSMO 213.055)**

COMES NOW Plaintiff, Madison Angell, by and through her attorneys, Mathis, Marifian & Richter, Ltd., and for Count I of her Complaint against Defendant, states as follows:

35. Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 34 of this Complaint as if such were fully set forth herein.

36. At all times material to this action, Defendant was and is an employer under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e(b)) and RSMO 213.010(8).

37. At all times material to this action, Plaintiff was an employee under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e(f)).

38. Defendant discriminated against Plaintiff because of her race in the terms and conditions of her employment, in violation of 42 U.S.C. §2000e-2 by subjecting him to a hostile work environment because of her race.

39. Defendant discriminated against Plaintiff because of her race in that Defendant told Plaintiff that she was attempting to exert her "white privilege", just prior to discharge of Plaintiff by Defendant, in violation of 42 U.S.C. § 2000e-2.

40. It is Plaintiff's position that this use of the term "white privilege" and discussion of her attempts to exert it speaks to deeper racial discrimination against Plaintiff at play involving her discharge.

41. Defendant discriminated against Plaintiff because of her race in violation of RSMO 213.055(1)(a) in that Plaintiff was discharged based on her race.

42. On or about April 2, 2025, Plaintiff submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission and the Missouri Commission on Human

Rights against Defendant in which she alleged racial discrimination, disability discrimination, and retaliation.

43. On or about July 6, 2026, the EEOC issued a Notice of Right to pursue a private lawsuit regarding Plaintiff's Charge of Discrimination.

44. Plaintiff has filed this lawsuit within 90 days of receiving her EEOC Notice of Rights to Sue.

45. All administrative prerequisites to filing this action under Title VII and the Missouri Human Rights Act have been met.

46. Defendant's conduct was wilful, wanton, and malicious, or in reckless disregard of Plaintiff's federally protected rights.

47. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been damaged in that she has lost wages and benefits, suffered loss of enjoyment of life, and inconvenience.

WHEREFORE, Plaintiff, Madison Angell, asks that this Court enter Judgment in her favor and against Defendant for equitable relief including backpay and, if appropriate, reinstatement or frontpay, compensatory and punitive damages, interest, attorney's fees and costs, and such further relief as this Court deems necessary and appropriate.

## COUNT II
## ADA & MHRA: Disability Discrimination
## (42 U.S.C. § 12101 et seq. & RSMO 213.055)

COMES NOW Plaintiff, Madison Angell, by and through her attorneys, Mathis, Marifian & Richter, Ltd., and for Count II of her Complaint against Defendant, states as follows:

48. Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 47 of this Complaint as if such were fully set forth herein.

49. At all times material to this action, Defendant was and is an employer under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111(5)) and RSMO 213.010(8).

50. At all times material to this action, Plaintiff was an employee under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111(4)).

51. Plaintiff was at all times during her employment with Defendant LIV disabled as is defined under 42 U.S.C. § 12102(1-2) in that Plaintiff had a mental impairment (Bipolar II) which substantially affected her major life activities (including those mentioned in the Statute such as working, communicating, thinking, concentrating, learning, etc.).

52. Defendant violated the Americans with Disabilities Act in that Defendant discriminated against Plaintiff on the basis of her disability, discharging her, and not making reasonable accommodations for Plaintiff as requested under 42 U.S.C. §12112.

53. Defendant also violated the Missouri Human Rights Act under RSMO 213.055(1)(a) by discharging her based on her disability.

54. Plaintiff made a timely request to the Missouri Commission on Human Rights, and on July 6, 2026, received a Notice of Rights to pursue a private lawsuit regarding her claim within ninety (90) days of the Notice.

55. This lawsuit is filed within 90 days of the date on the Notice.

56. All administrative prerequisites to suing under the Americans with Disabilities Act and the Missouri Human Rights Act have been met.

57. As stated above, early in her employment with LIV, Plaintiff disclosed to her direct supervisor, the owners of LIV, and two different administrative leaders within LIV, that she was Bipolar (specifically Bipolar II) and that, based on her diagnosis, she needed certain reasonable accommodations such as additional time to respond to immediate demands and questions.

58. Thus, not only was Plaintiff disabled under the Americans with Disabilities Act, Defendant knew or should have known that Plaintiff was disabled during her employment with Defendant.

59. Defendant, on October 6th-8th, 2024, during Plaintiff's planned vacation and shortly after she returned from vacation, and notified Plaintiff that she would have more responsibilities, and that her job description was being changed.

60. When Plaintiff voiced concerns about the changes, Plaintiff was immediately called "hostile" and put on 48-hour leave without pay.

61. Defendant violated the Americans with Disabilities Act in that Defendant failed to give Plaintiff appropriate reasonable accommodations.

62. In this specific instance, Plaintiff was not given the reasonable accommodation of additional time to respond to her new responsibilities and job description.

63. Further, it is Plaintiff's position that if Defendant had acted using the knowledge that Plaintiff was disabled, and was Bipolar, Defendant would have given Plaintiff notice of a potential new change much earlier and given Plaintiff the ability to discuss it rather than surprising Plaintiff with the change just as she's coming back from a vacation.

64. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has been damaged in that she has lost wages, benefits, suffered loss of enjoyment of life and inconvenience.

WHEREFORE, Plaintiff, Madison Angell, asks that this Court enter Judgment in her favor and against Defendant for equitable relief including backpay and, if appropriate, reinstatement or frontpay, compensatory damages, interest, attorney's fees and costs, and such further relief as this Court deems necessary and appropriate.

**COUNT III**
**ADA: Retaliation (42 U.S.C. § 12203(a))**

COMES NOW Plaintiff, Madison Angell, by and through her attorneys, Mathis, Marifian & Richter, Ltd., and for Count III of her Complaint against Defendant, states as follows:

65. Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 64 of this Complaint as if such were fully set forth herein.

66. At all times material to this action, Defendant was and is an employer under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111(5)) and RSMO 213.010(8).

67. At all times material to this action, Plaintiff was an employee under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111(4)).

68. Under 42 U.S.C. §12203(a), it is made unlawful to retaliate against an individual, such as Plaintiff, for opposing any act or practice made unlawful by the Americans with Disabilities Act.

69. Under 42 U.S.C. §12112(b)(5), it is made illegal to not make reasonable accommodations to the known physical limitations of an otherwise qualified individual with a disability who is an employee.

70. Defendant, in surprising Plaintiff with more job responsibilities, and with a change in her job description, necessarily did not give her the asked for reasonable accommodation in the form of additional time.

71. Plaintiff opposed this unlawful practice, under 42 U.S.C. §12203(a), both when she initially attempted to secure reasonable accommodation and also when she voiced concerns about the changes in job description and job responsibilities.

72. Defendant retaliated against Plaintiff because of her disability, and because of her assertion of her rights.

73. As a direct and proximate result of Defendant's retaliation, based on Plaintiff's disability, Plaintiff has been damaged in that she has lost wages and other benefits of full employment and has suffered emotional distress, humiliation, and loss of enjoyment of life.

74. As stated in this section, Plaintiff's discharge was retaliatory in nature based on her disability.

75. Defendant's conduct was wilful, wanton, malicious, and with a complete disregard for Plaintiff's rights under the Americans with Disabilities Act.

WHEREFORE, Plaintiff, Madison Angell, asks that this Court enter Judgment in her favor and against Defendant for compensatory damages, for emotional distress damages, for punitive damages, and such further relief as this Court deems necessary and appropriate.

**COUNT IV**
**Whistleblower: Retaliation**
**(RSMO 285.575)**

COMES NOW Plaintiff, Madison Angell, by and through her attorneys, Mathis, Marifian & Richter, Ltd., and for Count IV of her Complaint against Defendant, states as follows:

76. Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 75 of this Complaint as if such were fully set forth herein.

77. At all material times, Defendant was an employer under RSMO 285.575(2).

78. At all material times, Plaintiff was a protected person and an employee under RSMO 285.575(4), which means that if Plaintiff were to report serious misconduct that violates a clear mandate of public policy as articulated in constitutional provision, statute, or regulation.

79. LIV is a recovery support program certified by the Department of Mental Health Division of Behavioral Health ("DBH").

80. DBH's accreditation regulations set forth specific fiscal management policies for organizations such as LIV, which include monitoring and reporting financial activity, annual budget and quarterly fiscal reports that are provided and reviewed by the governing body and administrative staff, as well as maintaining adequate internal controls for safeguarding or avoiding misuse of assets. 9 CSR 10-7.100.

81. In addition, the governing body of the organization must provide fiscal planning and oversight, ensure organizational planning and quality improvement in service delivery, establish policies to guide administrative operations and service delivery, and delegate operational management to an executive director to effectively operate its services. 9 CSR 10-7.090.

82. Also, personnel policies, practices and procedures must include written job descriptions for each position and ensure that the staff possess the training, experience and credential to effectively perform their assigned services and duties. 9 CSR 10-7.110.

83. The conduct in question was Plaintiff bringing forward her concerns regarding lack of oversight of potential theft and misuse and lack of adequate controls of funds to the attention of LIV's board president and LIV's CEO, Cameo Jones, sometime within the week of September 23rd-27th, 2024.

84. Plaintiff was very concerned about this lack of control and oversight for those funds because, as those funds were state and federal grant funds, those funds came along with additional requirements.

85. These concerns were brought forward the week before her planned vacation and the sudden changes in her job description and job responsibilities.

86. Bringing forward these very valid concerns regarding the regulatory violations, and at the very least poor controls and oversight over those same funds, caused a retaliatory change in her job responsibilities and shortly thereafter a retaliatory discharge, which was unlawful under RSMO 285.575.

87. Defendant took retaliatory action against Plaintiff, by discharging her, for disclosing to supervisors and other management officials conduct which Plaintiff had a good faith belief violated state law or federal law.

88. As a direct and proximate result of Defendant's retaliation, Plaintiff has been harmed in that she has lost wages and other benefits of full employment and has suffered emotional distress, humiliation, and loss of enjoyment of life.

WHEREFORE, Plaintiff, Madison Angell, asks that this Court enter Judgment in her favor and against Defendant for backpay with interest, reinstatement or frontpay, if appropriate, liquidated damages, litigation costs, expert witness fees, attorney fees, costs, emotional distress damages, and such further relief as the Court deems appropriate.

## COUNT V
## Common Law Retaliatory Discharge

COMES NOW Plaintiff, Madison Angell, by and through her attorneys, Mathis, Marifian & Richter, Ltd., and for Count V of her Complaint against Defendant, states as follows:

89. Plaintiff hereby incorporates by reference the allegations contained within paragraphs 1 through 88 of this Complaint as if such were fully set forth herein.

90. There is a public policy exception to at-will employment that provides that if an employee is discharged by an employer in violation of a clear public policy, even if at-will, the employee has a cause of action against the employer for wrongful discharge. *Boyle v. Vista Eyewear, Inc.*, 700 S.W.2d 859, 871 (Mo. Ct. App. 1985).

91. Although employers are generally able to discharge at-will employees, under the public policy principle, no employer should lawfully be able to do that which tends to be against the public good. *Id*.

92. As is stated above, Plaintiff reported to her supervisors, and her nonprofit company, what she believed to be problems regarding lack of oversight and lack of adequate controls for the money within the nonprofit.

93. Plaintiff was retaliated against based on those reports, in that Plaintiff's job responsibilities and job descriptions were changed, Plaintiff was suspended, and Plaintiff was discharged, shortly after her reporting of the lack of oversight and lack of adequate controls.

94. Public Policy dictates that Plaintiff should be able to report potential problems surrounding the oversight and controls of nonprofit organization funds, especially grant money given by the state government and federal government.

95. Public Policy also dictates that Plaintiff should have reasonable accommodations she had requested from Defendant as a disabled person.

96. Defendant did not give Plaintiff such reasonable accommodations as a disabled person and went against Public Policy.

97. As a direct and proximate result of Defendant's retaliation, based on Plaintiff's reporting, Plaintiff has been damaged in that she has lost wages and other benefits of full employment and has suffered emotional distress, humiliation, and loss of enjoyment of life.

98. As stated in this section, Plaintiff's discharge was retaliatory in nature based on her reporting and on her disability.

99. Defendant's conduct was wilful, wanton, malicious, and with a complete disregard for Plaintiff's rights.

WHEREFORE, Plaintiff, Madison Angell, asks that this Court enter Judgment in her favor and against Defendant for backpay with interest, reinstatement or frontpay, if appropriate, liquidated damages, litigation costs, expert witness fees, attorney fees, costs, emotional distress damages, punitive damages, and such further relief as the Court deems appropriate.

Respectfully submitted,

**MATHIS, MARIFIAN & RICHTER, LTD.**

By: /s/ *Louis B. Laugges*
Melissa C. Meirink, #63847MO
Louis B. Laugges, #6320971IL
MATHIS, MARIFIAN & RICHTER, LTD.
23 Public Square, Suite 300
Belleville, IL 62220
Phone: (618) 234-9800
Facsimile: (618) 234-9786
mmeirink@mmrltd.com
llaugges@mmrltd.com

*Attorneys for Plaintiff, Madison Angell*